(41 Misc. Rep. 407.)

### In re McMONAGLE.

(Supreme Court, Special Term, St. Lawrence County. September, 1903.)

1. LIQUOR TAX CERTIFICATE—REVOCATION.
   Revocation of a liquor tax certificate because the statements in the application for the certificate were false when made cannot be defeated by subsequently changing the condition of the place so as to make it comply with the statute.

2. SAME—HOTEL.
   The liquor tax law requires a hotel to contain at least six bedrooms with independent access by doors from hall, in addition to the rooms occupied by the family and servants; and where, in order to leave six rooms for guests, the family, after the application for a tax certificate, but before a sale of any liquors, vacated one of the bedrooms and lodged in a hall, into which five of the other bedrooms opened, the remaining bedroom being upon another floor, it is not a compliance with the law, the use of the hallway making it practically a bedroom.

3. SAME—CONSENT—NEAREST ENTRANCE.
   Liquor Tax Law, § 17, subd. 8 (Laws 1897, p. 220, c. 312), requiring the consent of owners of a dwelling, the nearest entrance to which is within 200 feet of the nearest entrance to the premises described, includes in the phrase "nearest entrance to the premises" all entrances.

4. SAME.
   A rear entrance in a building, by which the barroom can be reached by walking 10 feet through a hall, is an entrance, within the meaning of Liquor Tax Law, § 17, subd. 8; and, if within 200 feet of the nearest entrance to a dwelling, the building in which such entrance is, is not entitled to a certificate.

Petition by Anna McMonagle for an order revoking a liquor tax certificate to Naomi N. Wainwright. Revoked.

Kellogg & Mulligan, for petitioner.
Ledyard P. Hale, for respondent.

JOHN M. KELLOGG, J. The petitioner seeks a revocation of the liquor tax certificate at the Riverside Hotel, at the village of Rensselaer Falls, upon the ground of false statements made by respondent in the application for said certificate. Her husband, the manager of the business, owned the premises, and they resided there, and were familiar with the property and its surroundings, had been hotel keepers for years and he had previously been convicted under the excise law for two offenses, and they each had knowledge of the situation, and were familiar with the excise law.

1. The dining room contained only 144 feet of floor space, instead

of 150, as shown by the statement. Nevertheless all guests at the house received reasonable accommodations at the table, and, when the dining room was full, guests were seated at the table in the sitting room—a room not connected with the other dining room or kitchen, except through the main hall. Another dining room is in process of erection, and the court would hesitate to revoke a certificate upon this matter, standing alone.

2. The hotel does not comply with the law with reference to the bedrooms, and the statements made by the respondent in that respect are false. When the application was made and a certificate granted, there were but six rooms in the hotel furnished as bedrooms, and one of these rooms did not have an independent access by a door opening into the hallway; but about a month after the certificate was granted the excise department called attention to this defect, and a door was cut from the hall into this room, and we need not consider that matter further. The family of the respondent consists of herself and husband, and they had one servant, and at times more. When the application for the certificate was made, June 18th, the respondent and her husband occupied one of the six bedrooms. The certificate was received June 19th, and the sale of liquor on the premises was not begun until June 22d. Upon June 22d the respondent and her husband slept in a bed which they had put up in the hallway of the hotel into which the five sleeping rooms in the second story opened, and since that time they have occupied such hallway as their bedroom; there being no partition or screen of any kind between the bed and the remainder of the hall. Ordinary bedroom furniture and their clothing are kept in that part of the hall. The servant, when there was but one, slept in the attic. At the time this proceeding was commenced a second servant was employed, and a lop was fitted up in the lower hall, from which the remaining bedroom opens; and she occupied that hall for a sleeping room for about a week, when the bedroom in the new addition to the hotel was arranged, and a bed for both the servants moved into it. We do not think this is a compliance within the statutory requirement that there shall be at least six bedrooms, exclusive of those occupied by the family and servants. The respondent has in fact made the hall, into which the other bedrooms open, her bedroom. A guest arriving late, or departing early, or desiring to leave his room in the night, must pass through the sleeping room of the respondent and her husband to gain access to the hall below, or the street. And the evidence shows that guests passed through the hallway while the respondent was in bed, only screened from observation by the bedclothes. This arrangement does not constitute a hotel, as defined by the statute. When the statement was made and certificate granted there were but five bedrooms, aside from the one occupied by the respondent; and her removal into the hall into which these bedrooms opened does not cure the defect, but now presents a situation where, under section 28, subd. 2, of the liquor tax law (Laws 1897, p. 229, c. 312), "the holder of said certificate was not entitled to receive or hold the same."

3. There were buildings used exclusively as residences, the nearest entrance to which were within 200 feet of the nearest entrance to

the premises where the liquor was to be sold, and the statements in
that respect were false. The Riverside Hotel, up to the granting of
this certificate, was a residence—a frame building—all under one roof,
and nearly square. A hall ran through the building from the front
to the rear on the ground floor. There was a door opening into this
hall from the street in front, and another from the hall at the back
of the house. Along near the center of the hall was a stairway, and
from this stairway to the back of the building the hall was narrowed
up. On the easterly side of the hall and building the room in front
was the sitting room, the next the dining room, and in the rear the
kitchen. Upon the other side of the hall was the parlor (at first the
barroom, and now the office), immediately back of it the bedroom (at
first a bedroom, and now a barroom), and in the rear a storeroom
(now a bedroom). Each of these rooms opened into the hall by a
door. The distance from the front door to the front entrance to the
residence of the petitioner was 190.95 feet. The distance from the
back door to the front entrance to the residence of the petitioner was
180.4 feet. The distance from the back door to the front entrance
of the residence of Mr. Redell was 191.5 feet. This situation re-
mained the same until Monday, the 22d of June, when the re-
spondent caused the front door to be closed up, a window put in
its place, and a new entrance made into the barroom, which was
in the northwesterly corner of the house, where had been the
parlor; the new entrance being 205.3 feet from the McMonagle
entrance. When the respondent swore to the statement before the
attorney for the surety company which furnished her bond, he in-
formed her that making the application before the front door was
closed would not cause her any trouble, if such door actually was
closed up before any liquor was sold. She received the liquor tax
certificate on Saturday evening, June 20th, and Monday morning,
June 22d, proceeded to close up the old entrance door, and no liquor
was sold until after it was closed. After the old main entrance was
closed, the only entrance to the hotel was by the new entrance,
through the barroom, or by the back door referred to. After being
there a month, the bar was put in a room back of the first barroom,
and a new door cut into it, the old barroom being used as an office,
so that then the entrances to the hotel were the new entrance leading
into the office, the new entrance leading into the barroom, and the
back entrance leading into the back hall. Between the barroom and
the rear outside wall of the building was a small bedroom, about 8x10
feet, and by entering the back hall from the rear door a person is
within 8 or 10 feet of the barroom, and has only to open a door to
enter it. It does not appear that the new addition to the hotel reme-
dies the defect as to this side entrance in any way, or leaves this en-
trance outside of the prohibited distance from these dwellings. It
must therefore be assumed that the situation as to it remains the same
as when the application was made, and that it is not being changed.

Subdivision 8 of section 17 of the Liquor Tax Law requires the
consent of owners of a dwelling, the "nearest entrance" of which is
within 200 feet, measured in a straight line, of the "nearest entrance
* * * to the premises described in said statement as those in

which traffic in liquor is to be carried on." Subdivision 3 of the same section requires to be stated "the premises where such business is to be carried on, stating the street and number if the premises have a street and number, and otherwise such apt description as will reasonably indicate the locality thereof, and also the specific location on the premises of the bar or place at which liquors are to be sold." The statement signed by the respondent to the county treasurer describes "the premises where the business is to be carried on" as "the Riverside Hotel"; the specific location of the "bar on said premises" as the front room on the first floor, northwest side or end of the building; and the thirteenth question in said statement is, "How many buildings are there occupied exclusively as dwellings, the nearest entrance to which is within 200 feet, measured in a straight line, of the nearest entrance to the premises where the traffic in liquors is intended to be carried on?" to which question the respondent answered, "None." The words of the statute and of the statement show clearly that "the premises" referred to is the hotel, and not the "bar," or particular room in which the bar is placed. "The premises" mentioned in subdivisions 3 and 8 and the statement are the same "premises." Numerous decisions define what the meaning of "the nearest entrance to the dwelling" is, as including all entrances—front, side, or rear. Matter of Saunderson, 34 Misc. Rep. 375, 69 N. Y. Supp. 928; Matter of Veeder, 31 Misc. Rep. 569, 65 N. Y. Supp. 517; Matter of Cheney, 35 Misc. Rep. 598, 72 N. Y. Supp. 134. And by the same course of reasoning the "entrance to the place where the liquor is to be sold" must mean any entrance—front, side, or rear. By the use of the word "nearest" entrance the statute clearly contemplates that there may be more than one entrance. It is not probable that there would ordinarily be more than one front entrance. Any one desiring to visit this bar otherwise than by the front door can enter the rear door into the back hall, and then by a door enter the barroom. This back door is a prohibited entrance, and is within 8 or 10 feet of the barroom. The erection of the new addition, it is probable, does not change the situation in the rear of the building, for, should it be between the rear door and the residences in question, it would have no effect, as the measurements are to be made in a straight line, disregarding all other obstructions. Matter of Ruland, 21 Misc. Rep. 504, 47 N. Y. Supp. 561; Matter of Bridge, 36 App. Div. 533, 55 N. Y. Supp. 54.

We therefore hold that the premises referred to in the statement and statute, and as to which the measurements are to be made, is the Riverside Hotel, and that this rear door in the wall of the building, giving access from the outside to the building, and within 10 feet of the barroom, is an entrance, within the meaning of the statute. At the time the application was made and the liquor tax certificate granted, the entrances were the front and rear door, both of which were within the prohibited distance. At the time of the hearing in this matter, the rear door was still an entrance to the premises, and was within the prohibited distance of both of those residences. The cases hold that where the statement is false when made, and where the facts existing at the time of the statement do not justify the granting of a

liquor tax certificate, changing the circumstances afterward so as to comply with the statute does not defeat the application for a revocation. Matter of Barnard, 48 App. Div. 423, 63 N. Y. Supp. 255; People ex rel. Macy & Co. v. Murray, 5 App. Div. 66, 38 N. Y. Supp. 903. Nevertheless, the front entrance having been permanently closed pursuant to an intent existing when the application was made, although that intent probably was qualified so that the change would not be made unless the certificate was granted, and the inside bedroom connected with the hall, a court would feel reluctant, under all the circumstances, to cancel the certificate, were the building fully qualified for a license at the time the proceedings were instituted. But as we have seen, the situation as to the back door and the situation as to the bedrooms (except as to the new door) have not been remedied; and, as they now exist and are used, a license would not be granted if the application were made with the actual facts stated as they exist. We are satisfied from the evidence that, within the mean- ing of the law, the McMonagle residence was used exclusively as a residence at the time the statement was made; and as to the Redell residence, there is no dispute but such was the fact.

But it is said that this is not what is properly called a "Raines law hotel." The respondent and her husband have been hotel keepers for years. They were carrying on the hotel in this little village, and the house was burned May 20th preceding. They bought these prem- ises expressly for a hotel, and are now erecting an addition to it, ex- pending about $2,500 to make it a desirable hotel; the new addition to have a suitable dining room, six sleeping rooms, kitchen, and other accommodations. These are matters which should appeal to the dis- cretion of the court as far as it has any. But as we have seen, on ac- count of the situation of the back entrance, as it now exists, and of the bedrooms as they now are, a certificate could not be granted. The liquor tax certificate should be revoked and canceled, with $25 costs and disbursements to be taxed.

Ordered accordingly.