THE PEOPLE ex rel. JOHN HIGGINS, Relator, v. DANIEL J. HEGEMAN, County Treasurer of Nassau County, Respondent.

(County Court, Nassau County, Special Term, January, 1912.)

Intoxicating liquors — Granting license — Who entitled to license as an innkeeper — Prohibition of traffic in certain localities — Exception of hotel — Corporations — County treasurer's right to assume that when notice of abandonment was filed there was no hotel being conducted on said premises.

The word "hotel" as used in the Liquor Tax Law contemplates only such a structure as complies with section 30N of said statute.

County Court, Nassau County, January, 1912.     [Vol. 75.

The character of premises for the purpose of featuring a liquor tax certificate must be determined as of the time when the application for such certificate is made and if the premises are to be used as a hotel the application must so state; otherwise no certificate can issue conferring the privilege of conducting a hotel on the premises no matter how full or ample its structural requirements may be.

H, in his application made June 2, 1908, for a liquor tax certificate to traffic in liquors at premises the character of which both structurally and in legal effect was what is commonly known as a saloon, stated that he did not intend to carry on a hotel on the premises. In the next application made by L for such a certificate, the applicant stated that he intended to carry on a hotel on the premises and that such business was just commencing. In his next application for a certificate L stated that he intended to carry on a hotel on the premises and that they had been continously occupied as a hotel since June 1, 1908, and in his last application for a certificate stated that he did not intend to carry on a hotel on the premises and in answer to the question "Since what date have said premises been continuously occupied as a hotel?" answered, "Not a hotel." On December 29, 1910, and within three months of the issuing of the last liquor tax certificate, L duly filed a notice of abandonment of his traffic in liquors from said premises to certain other premises in the same town and on the same day (1) filed a petition to change the place of traffic to the latter place; (2) in an application for a liquor tax certificate to traffic in liquors at the last mentioned premises stated that he intended to carry on a hotel thereon and the certificate was transferred to said premises, and (3) filed a petition to transfer to a corporation the liquor tax certificate last issued to him. The corporation made its application for a liquor tax certificate stating that it intended to carry on a hotel on the premises and that they had been continuously occupied as such since December 27, 1910, and a liquor tax certificate was duly issued to the corporation. On certiorari to review the action of the county treasurer in refusing thereafter to issue a liquor tax certificate to the first mentioned premises to the owner of the fee the corporation was allowed to intervene and on the hearing it was admitted that the ratio of population of the town on October 1, 1911, was less than 750 for each liquor tax certificate issued for said town.

Held, that the certificate was properly refused to relator as the provisions of section 8(9) of the Liquor Tax Law do not permit the issuance of another liquor tax certificate in a town where the ratio of population is not greater than 750 to each certificate issued.

The fact that relator's building had only five bedrooms instead of six, one of which was materially deficient in floor area and air space and four of which had no independent access by a door leading into a hallway, and that said premises also failed to comply with the structural requirements of a hotel as prescribed by section 30N of the Liquor Tax Law, was ground for refusing the certificate.

The provision of subdivision 9 of section 8 of the Liquor Tax Law, as amended by Laws of 1910, chapter 494, relating to the issuance of liquor tax certificates, contained two exceptions, one in a case where the place abandoned was a hotel and the other in a case where the new place was a hotel, and under said subdivision, prior to the enactment of chapter 287 of the Laws of 1911, by which the exemptions in relation to hotels were eliminated, it was not necessary if either the old or the new place was a "hotel" within the definition of the statute that the traffic in liquors be actually carried on in the new premises within sixty days of the filing of a notice of abandonment.

The corporation having in every respect complied with the law and obtained a valid certificate for the new premises after the notice of abandonment was filed and the transfer made and having made valuable improvements in and about the premises partly in reliance on the right acquired by the transfer to it of the last liquor tax certificate issued to L to traffic in liquors in its hotel premises, it would be unjust and inequitable to deprive it of its certificate acquired in good faith and for the purpose of aiding it in carrying on a hotel.

Upon the last application filed by L for traffic in liquors at the premises for which the relator had been refused a certificate the county treasurer had the right to assume that when the notice of abandonment was filed by L on December 29, 1910, there was in fact no hotel being conducted at said premises, for which reason, as well as the fact that the building thereon was not in accordance with the structural requirements of the Liquor Tax Law, it was unnecessary to obtain the consent of the relator, the owner of the property, that the premises be abandoned.

PROCEEDING to review the action of the county treasurer of Nassau county in refusing to issue to relator, John Higgins, a liquor tax certificate.

James L. Dowsey, for relator.

Ira A. Rosenson, for county treasurer.

Herbert H. Kellogg, for Thorne Manor Company.

County Court, Nassau County, January, 1912.    [Vol. 75.

Niemann, J.   This is a proceeding to review the action of the county treasurer of Nassau county in refusing to issue to relator, John Higgins, a liquor tax certificate for traffic in liquors on premises on the northeast corner of Beach road and Maple street, Great Neck, Town of North Hempstead, Nassau county, New York, of which he is the owner in fee simple.

The facts are substantially as follows:

On June 2, 1908, one Edward F. Higgins filed an application for a liquor tax certificate under subdivision 1 of section 8, which was then section 11 of the Liquor Tax Law, for traffic in liquors at the above described premises, and, in answer to question six of the said application, " What other business is to be carried on in connection therewith, or on the same premises, by the applicant, or any other person? " the said applicant answered, " No," and in answer to question twenty in said application, " Does the applicant intend to carry on a hotel on such premises? " said applicant answered, " No."   A liquor tax certificate was issued to said applicant on June 2, 1908, which expired on September 30, 1908.

On September 17, 1908, one John I. LeBlanc filed an application for a liquor tax certificate under said section and subdivision, for traffic in liquors at said premises, and in answer to question 6 of said application, " What other business is to be carried on in connection therewith, or on the same premises, by the applicant or any other person? " stated " Hotel;" and in answer to question twenty of said application, " Does the applicant intend to carry on a hotel on said premises? " said applicant answered, " Yes;" and in answer to question twenty-two of said application, " Since what date have said premises been continuously occupied as a hotel? " said applicant answered, " Just commencing." A liquor tax certificate was thereupon issued, on September 28, 1908, to said applicant, which expired on September 30, 1909.

On September 24, 1909, said John I. LeBlanc filed an application for a liquor tax certificate for traffic in liquors at the above described premises under the said section and

subdivision and in said application, in answer to question six, " What other business is to be carried on in connection therewith or on the same premises, by the applicant or any other person?" said applicant answered, " Hotel;" and in answer to question twenty, " Does the applicant intend to carry on a hotel on such premises." the applicant answered, " Yes;" and in answer to question twenty-two, " Since what date have said premises been continuously occupied as a hotel?" said applicant answered, " June 1, 1908." A liquor tax certificate was thereupon issued, September 24, 1909, to said LeBlanc, which expired September 30, 1910.

On October 3, 1910, said John I. LeBlanc filed his application for a liquor tax certificate under the said section and subdivision for traffic in liquors at the above premises, and, in answer to question six of said application, " What other business is to be carried on in connection therewith, or on the same premises, by the applicant or any other person?" said applicant answered, " None;" and in answer to question twenty, " Does the applicant intend to carry on a hotel on said premises?" said applicant answered, " No;" and in answer to question twenty-two of said application, " Since what date have said premises been continuously occupied as a hotel?" said applicant answered, " Not a hotel." A liquor tax certificate was thereupon issued October 3, 1910, to said applicant, for traffic in liquors at the above described premises, which certificate expired on September 30, 1911.

On December 29, 1910, said certificate holder, John I. LeBlanc, filed with the county treasurer of Nassau county a notice of abandonment, abandoning traffic in liquors from the above premises at the northeast corner of Beach road and Maple street, to premises on the south side of Cedar drive, about 1200 feet west of Bay View avenue, Great Neck, in said town and county.

On said 29th day of December, 1910, the said John I. LeBlanc also filed a petition to change the place of traffic in liquors from the said premises, northeast corner of Beach road and Maple street, to the said premises on the south side of Cedar drive.

On the same date said John I. LeBlanc filed his application in writing with said county treasurer for a liquor tax certificate under said section and subdivision, for traffic in liquors at the said premises situate on the south side of Cedar drive; and, in answer to question six, "What other business is to be carried on in connection therewith, or on the same premises, by the applicant or any other person?" the said applicant answered, "Hotel;" and, in answer to question twenty, "Does the applicant intend to carry on a hotel on such premises?" said applicant answered, "Yes."

The said application being accompanied by the necessary bond and consents, traffic in liquors under said certificate was transferred from the said premises, northeast corner of Beach road and Maple street, to the said premises on the south side of Cedar drive.

On said 29th day of December, 1910, the said John I. Le Blanc also filed with said county treasurer a petition to transfer said certificate to the Thorne Manor Company, for traffic in liquors at said premises on the south side of Cedar drive.

On the same day the said Thorne Manor Company filed with said county treasurer its application for a liquor tax certificate under said section and subdivision, for traffic in liquors at the said premises south side of Cedar drive; and, in answer to question six of the application, "What other business is to be carried on in connection therewith, or on the same premises, by the applicant or any other person?" said applicant answered, "Hotel;" and in answer to question twenty of said application, "Does the applicant intend to carry on a hotel on such premises?" the applicant answered, "Yes;" and in answer to question twenty-two of said application, "Since what date have said premises been continuously occupied as a hotel?" applicant answered, "December 27th, 1910."

It was admitted upon the hearing that the ratio of population of the said town of North Hempstead, according to the census report of 1910, was 17,831, and that the number of certificates issued for this township under subdivision 1, section 8 of the Liquor Tax Law was 103, and that the ratio

of population on the 1st day of October, 1911, was less than 750 for each certificate.

The order allowing the writ of certiorari to issue was granted on September 15, 1911, and the matter remained in abeyance for about two months, when the Thorne Manor Company, the owner and holder of the certificate at the new premises, south side of Cedar drive, discovered the pendency of this action and made a motion, on November 11, 1911, before the county judge of Nassau county, to be allowed to intervene as a respondent in the proceeding; and, inasmuch as the decision of the court in this proceeding would vitally affect the certificate which said Thorne Manor Company now holds for the last mentioned premises, the motion was, upon consent of all the parties, granted on the said last mentioned day, allowing the said Thorne Manor Company to intervene and making said company a party to this proceeding.

The said Thorne Manor Company did not file any separate return to the petition, but produced testimony on the trial in support of the return of the county treasurer, and the issue to be determined is that raised by the petition and said return.

The county treasurer, as appears by his return, refused to issue a liquor tax certificate to the relator upon two grounds: (1) that the relator's said premises did not comply with the structural requirements of a hotel as prescribed by section 30, clause N, of the Liquor Tax Law; (2) that traffic in liquors having been abandoned at the premises northeast corner Beach road and Maple street, to premises on the south side of Cedar drive, no liquor tax certificate for traffic in liquors under subdivision one of section eight of the Liquor Tax Law could thereafter be issued for said premises located on the northeast corner of Beach road and Maple street, because the issuance of such liquor tax certificate is prohibited by the provisions of subdivision 9 of said section 8 of the Liquor Tax Law, as the ratio of population in said town is not greater than 750 to each certificate.

I. As to whether relator's premises comply with the provisions of clause N of section 30 of the Liquor Tax Law,

the evidence is: John H. Lane was called as a witness for the Thorne Manor Company, and testified that he was a carpenter and builder and had worked in the making over of the building about three or four years ago; that the building was originally a barn, and that he made all the plans that were used in the reconstruction. The witness produced a copy of said plans, which he used to refresh his memory while on the stand as a witness, but said plans were not put in evidence. He testified that the dimensions and arrangements of said building were as follows:

#### CELLARS.

Main cellar, 18 by 28 feet.

Cellar under new extension, 15 by 16 feet.

#### FIRST OR GROUND FLOOR.

Bar-room, designated on plan as dining room, 17 feet 6 inches by 19 feet.

Kitchen and living room, 11 feet 6 inches by 17 feet.

#### SECOND FLOOR.

First room, 8 feet 6 inches by 11 feet 6 inches.

Second room, 8 feet 6 inches by 11 feet 6 inches.

Third room, 9 feet 3 inches by 11 feet 6 inches.

Fourth room, 7 feet 6 inches by 9 feet 3 inches.

Fifth room, 12 by 17 feet.

#### HALLS.

Main hall on first floor, 5 feet wide.

Hall leading into corner room on second floor, 5 feet 6 inches wide.

Lane further testified that the first story of the Higgins building was eight feet six inches high and the second or upper story seven feet six inches high, and that there were no toilet arrangements and no room which could be used for an office in said building.

John I. Le Blanc, called as a witness for the Thorne Manor Company, testified that, in the fall of 1910, at the time he occupied the premises, there was one room on the

ground floor which was used as a kitchen and sitting room, and there was a bar-room, and another room used as a dining room, and that there were five bedrooms upstairs, one being a large room on the easterly side of the building, twelve by seventeen feet. . This room was not divided by any partition, nor was there any indication of any partition. Only one door opened into these rooms on the second floor from the hall. The witness further testified that his wife and five children were living with him on the premises in question during the time of his occupancy thereof, and that from October 1 to December 29, 1910, they occupied all the rooms in said building, using four as bedrooms and one as a sitting room.

Clause N of section 30 of the Liquor Tax Law contains the following definition of a hotel: " * * * and the term ' hotel ' as used in this chapter shall mean a building regularly used and kept open as such for the feeding and lodging of guests, where all who conduct themselves properly and who are able and ready to pay for their entertainment, are received if there be accommodations for them, and who, without any stipulated engagement as to the duration of their stay, or as to the rate of compensation, are, while there, supplied, at a reasonable charge, with their meals, lodgings, refreshment and such service and attention as are necessarily incident to the use of the place as a temporary home, and in which the only other dwellers shall be the family and servants of the hotel keeper; and which shall conform to the following requirements, if situate in a city, incorporated village of twelve hundred or more inhabitants, or within two miles of the corporate limits of either: * * *

' '2. Such buildings shall contain at least ten bedrooms above the basement, exclusive of those occupied by the family and servants, each room properly furnished to accommodate lodgers and separated by partitions at least three inches thick, extending from floor to ceiling, with independent access to each room by a door opening into a hallway, each room having a window or windows with not less than eight square feet of surface opening upon a street or open court, light-shaft or open air, and each having at least eighty

square feet of floor area, and at least six hundred cubic feet of space therein; a dining-room with at least three hundred square feet of floor area, which shall not be a part of the bar-room, with tables, and having suitable table furniture and accommodations for at least twenty guests therein at one and the same time, and a kitchen and conveniences for cooking therein sufficient to provide *bona fide* meals at one and the same time for twenty guests. The same requirements shall apply to a hotel situated in any other place, except that the number of bedrooms for guests shall not be less than six, and the dining-room shall have not less than one hundred and fifty square feet of floor area, and the kitchen accommodations shall be sufficient for at least ten guests."

No part of the cellar of the Higgins building can be counted as a bedroom. The uncontradicted testimony shows that there were but five bedrooms which could at any time have been used as bedrooms, and these were all on the second floor, and one of these had much less than eighty square feet of floor area and very much less than six hundred cubic feet of air space. The second or upper story of the Higgins building, being seven feet six inches high, by computation, the small bedroom, viz.: the room seven feet six inches by nine feet three inches, was considerably less than six hundred cubic feet as required by said section 30, clause N.

It clearly appears from the evidence that the relator's building does not comply with the statutory requirements of a hotel. It is deficient in a number of substantial particulars required by the statute and hereinbefore pointed out, which may be briefly summarized as follows:

(a) There are only five bedrooms instead of six.

(b) There is no independent access by a door leading into a hallway from four of said bedrooms.

(c) One of said bedrooms is materially deficient in floor area and air space.

In addition to the foregoing deficiencies, all of which have been affirmatively established by proof taken upon the trial, there is no evidence that the following requirements of the statute have been complied with in the building in question, viz.:

(a) That bedrooms were furnished to properly accommodate lodgers.

(b) That each room was separated by a partition at least three inches thick, extending from floor to ceiling.

(c) That each bedroom had a window or windows with not less than eight square feet of surface opening upon a street or open court, light-shaft or open air.

(d) That there were kitchen accommodations for at least ten guests.

(e) That the dining-room had tables, and suitable table furnishings and accommodations for at least ten guests therein at one and the same time.

(f) That the kitchen had conveniences for cooking therein sufficient to provide *bona fide* meals at one and the same time for at least ten guests. Matter of Ryon, 39 Misc. Rep. 698, affd. 85 App. Div. 621; Matter of McMonagle, 41 Misc. Rep. 407; Cullinan v. O'Connor, 100 App. Div. 142; Matter of Locklin v. Woollett, 47 App. Div. 634; Matter of Locklin v. Lee, 47 id. 634.

The question whether this building complies with the law in respect to its structural requirements for use as a hotel must be determined as of the time when the application for a license was made. Matter of Barnard, 48 App. Div. 423; People v. Pettit, 128 id. 370; Matter of Ryon, *supra.*

II. The provisions of section 8 of subdivision 9 of the Liquor Tax Law, do not permit the issuance of another liquor tax certificate in a town where the ratio of population is not greater than 750 to each certificate. It is conceded in this case that the ratio of population on the 1st of October, 1911, was less than 750 for each certificate.

III. The claim is made by the relator that the Thorne Manor Company did not comply with subdivision 9 of section 8 of the Liquor Tax Law, as it existed at the time said abandonment and transfer took place, being chapter 494 of the Laws of 1910, in that said Thorne Manor Company did not commence to carry on traffic in liquors upon its premises within sixty days from the filing of the notice of abandonment, and that, therefore, the notice of abandonment became null and void. The part of said subdivision under which

said claim is made is as follows: · " In the case of a hotel, such notice shall be in writing and executed and · acknowledged by the certificate-holder and the owner or owners of the certificated premises and by any person to whom such certificate may have been transferred or assigned as collateral security for moneys loaned or any other obligation incurred; and in all other cases such notice shall be in writing and executed and acknowledged by the certificate-holder and by any person to whom such certificate may have been transferred or assigned, as collateral security for moneys loaned or any other obligation incurred; but in any case, except that of a hotel, such notice shall be null and void unless within sixty days from the filing thereof such traffic in liquors shall be lawfully carried on at the premises described in such notice as the premises in which it is intended to carry on such traffic, and continued· thereat for a period of not less than one year, and the filing of a notice that becomes null and void shall not be deemed an abandonment of the traffic at the premises described in such liquor tax certificate. After the filing of such notice as aforesaid, the prohibition herein contained shall not, in the case of a hotel, attach or apply to the premises described in such notice as the premises in which it is intended· to carry on such traffic in liquors in connection with the business of keeping a hotel, and in all other cases such prohibition shall not apply to the premises described in such notice as the premises in which it is intended to carry on such traffic, provided that an application for a certificate to carry on such traffic in liquors thereat shall be made in due form to the proper officer, within sixty days from the filing of such notice, and provided further that such traffic is continuously thereafter carried on at said premises for a period not less than one year."

Upon a careful reading of said section it would seem to me that there are two exceptions contained therein, one in a case where the place abandoned was a hotel, and the other in a case where the new place is a hotel. The said exceptions of subdivision 9 in favor of hotels were eliminated by chapter 287 of the Laws of 1911, but it was clearly

the intention of the Legislature, when it enacted the provisions of subdivision 9, by chapter 494 of the Laws of 1910, to make an exception in favor of hotels and to place a " hotel " upon an entirely different basis from a " saloon." I find, therefore, that, under said subdivision 9 of the Liquor Tax Law as it existed at the time when the notice of abandonment was filed herein, it was not necessary, if either the old or the new place was a hotel within the definition and meaning of the statute, that the traffic in liquors be actually carried on in the new premises within sixty days of filing of such notice of abandonment. In view of the foregoing construction of said section, it must be determined as a question of fact in this proceeding whether the Higgins place or the Thorne Manor Company place was a hotel within the meaning of the Liquor Tax Law.

(a) The Higgins place, abandoned by LeBlanc, as shown by the evidence herein, was not a hotel within the meaning of the Liquor Tax Law, because of the absence of structural requirements as fixed by the statute. The word " hotel," when used in the Liquor Tax Law, contemplated only such a structure as complied with the provisions of section 30, clause N. Furthermore, said Higgins place could not be classed or considered as a hotel, even if it had the necessary structural requirements, because the character of the premises for the purpose of issuing a liquor tax certificate thereon must be determined from the application for such certificate; and if the premises are to be used as a hotel such application must state that fact, otherwise, no matter how full or ample its structural requirements may be, no liquor tax certificate can be issued conferring the privilege of conducting a hotel on such premises. Matter of Barnard, 48 App. Div. 423; People ex rel. Belden Club v. Hilliard, 28 id. 140.

The application made by LeBlanc on the third day of October, 1910 (being the one abandoned and transferred), contains the positive statement that the applicant does not intend to conduct a hotel upon the premises. It follows from the foregoing that the Higgins place cannot be considered or classed as a hotel, and that its character, both

structurally and in legal effect, is what is commonly known as a saloon.

(b) The testimony shows that the building of the Thorne Manor Company was in every respect, so far as structural requirements are concerned, a hotel within the statutory definition. Philip C. P. Kelly, called on behalf of the Thorne Manor Company, testified that the hotel of the Thorne Manor Company is known as the Thorne Manor House and is a building having three stories and basement, situated in the center of a tract of land of about four hundred and sixty acres.

Ingomar Winters, called on behalf of said Thorne Manor Company, testified that on the first floor there is a dining-room twenty feet by thirty-three feet and a private dining-room nineteen feet three inches by eighteen feet; also an office, thirteen feet by eight feet; a kitchen, bar-room, lavatory, and pantry, and a large hall. On the second floor there are seven bed-rooms of the following dimensions: (1) eighteen by fourteen feet; (2) nineteen by fifteen feet; (3) nineteen by fifteen feet; (4) twelve by nineteen feet six inches; (5) seventeen by nineteen feet; (6) twelve feet two inches by thirteen feet; (7) fifteen by nineteen feet. And on the third floor there are three bed-rooms of the following dimensions: (1) thirteen by twenty feet; (2) sixteen by twenty feet; (3) eight by fifteen feet. In addition there are on said floor two store-rooms and on the second floor three bath-rooms. All of the bedrooms have outside windows of more than the size required by the statute. The entire building is equipped with a large heating plant. The bed-rooms are all properly furnished with beds, washstands, bed-steads, and complete furnishings. The dining-room is also fully furnished with dishes, tables, chairs, etc., sufficient to accommodate twenty guests at one and the same time, and there are enough utensils in the kitchen to supply one hundred people. There are a carriage-house and barn connected with the hotel and rooms for the steward and his family in this carriage-house.

But, assuming that under a different construction of said subdivision 9 there would be no exception in favor of the

Thorne Manor Company, and that it was incumbent upon them to carry on the lawful traffic in liquors upon their hotel premises within sixty days after the transfer of the license, I am satisfied from the evidence that the said Thorne Manor Company substantially complied with said provision.

The certificate of the Thorne Manor Company, dated December 17, 1910, filed in the office of the Secretary of State on December 21, 1910, was put in evidence; and from this it appears that the Thorne Manor Company was organized "to carry on the business of hotel and innkeepers, restaurant keepers, caterers, etc.," and "to purchase, lease or hire such real estate or interest therein as may be necessary for the purpose of the company's business." There was also introduced in evidence a lease from Villa Park Association of Great Neck to Thorne Manor Company, from which it appears that the Thorne Manor Company leased the building, together with a parcel of ground described therein, for the term of one year; that in lieu of rent the lessee was to furnish rooms, meals, refreshments and services, such as are accorded to guests of a hotel, to such people as the lessor or its agent, the McKnight Realty Company, might introduce, and to residents upon the property of the lessor, at club rates, that is, at a discount of at least ten per cent. of the regular rates; and also, in case a golf club is organized and land set apart for a golf course, the members of such club and their guests are to have the general use and possession of said premises as a club house, and the lessee to furnish rooms, meals, refreshments, and other services to such golf club members. On the part of the lessor it was agreed that the lessor would improve the grounds around said buildings by opening of the roadways; that it would connect the said buildings with the Citizens' Water Company supply and install electric lights, and do such other incidental repairing, etc., as might make such buildings adaptable to the successful conduct of a high class hotel." The Villa Park Association was engineering the tract of land surrounding said hotel and in doing so had to make new roads, change the grades and lay out new

12

streets. The hotel was not opened in complete shape until August or September of the year 1911; but, on December 29, 1910, the day of abandonment and issuance of the new certificate, taking the building as a whole, it was equipped and furnished with the necessary furniture and utensils to accommodate guests. The Thorne Manor Company did not actively press business during the winter season, and, in fact, did not do any regular business during said season, because of the condition of the roads, which were at that time practically impassable; but they had a caretaker in the premises for the purpose of taking care of any one who came there and wanted anything. There is no evidence in the case showing that actual sales of liquor were made within sixty days, but the mere fact that there was no actual business transacted would not invalidate the certificate. I am satisfied from the evidence that, immediately after the transfer of the certificate, the Thorne Manor Company in good faith opened the place as a hotel for the accommodation of such of the public as might desire to be accommodated, but the condition of the roads and the unfinished state of the development of the tract during the winter months made access to the hotel difficult and undesirable; and if, for this reason, or the fact that it was a suburban summer hotel situated in an out-of-the-way place a considerable distance from the traveled highway, there was during the winter season no business transacted, the want of actual sales of liquor would not invalidate the certificate. The provision that the notice of abandonment " shall be null and void unless within sixty days from the filing thereof such traffic in liquors shall be lawfully carried on " is substantially satisfied and complied with if within said period the hotel is·properly equipped and open for the use of the public.

The rights of the new certificate holder should not be lost or extinguished by want of actual business. If a licensee has acted in good faith, he should not be deprived of his license by reason of obstacles or difficulties of a physical nature which temporarily, at the beginning of his business enterprise, leave him without patronage. The record shows that the Thorne Manor Company in every respect has com-

plied with the law and obtained a valid certificate for the new premises after the notice of abandonment was filed and the transfer made. The Thorne Manor Company made valuable improvements in and about the premises, partly in reliance on the right acquired by the transfer of said liquor tax certificate to traffic in liquors in its hotel premises; and it would be unjust and inequitable to deprive it of its certificate which it has acquired in good faith and for the purpose of aiding it in carrying on a legitimate hotel for the accommodation of the public.

IV. It appears, from the last application filed by LeBlanc for traffic in liquors at the premises situated on the northeast corner of Beach road and Maple street, that no hotel was to be conducted. Upon this application the county treasurer had the right to assume that, when the notice of abandonment was filed on the 29th day of December, 1910, by LeBlanc, there was in fact no hotel being conducted at said premises. For this reason, as well as for the fact that the building upon the said premises was not in accordance with the structural requirements of the Liquor Tax Law, it was not necessary to obtain the consent of Higgins, the owner of the property that the premises be abandoned.

V. I find from the record before me that the action of the county treasurer of Nassau county was correct in refusing a liquor tax certificate to the relator Higgins for the various reasons hereinbefore discussed, and the application of the relator must, therefore, be denied. Writ quashed.

Ordered accordingly.